COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Fitzpatrick, Judge Clements and Senior Judge Coleman
Argued at Alexandria, Virginia


JASON HUGH ALBERT

                                                        OPINION BY
v.        Record No. 1571-04-4             JUDGE SAM W. COLEMAN III
                                                        JUNE 7, 2005
ANA S. RAMIREZ, F/K/A
 ANA SOFIA ALBERT


           FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                    Paul F. Sheridan, Judge Designate

           Mary M. Benzinger (Raymond B. Benzinger; Benzinger &
           Benzinger, P.C., on brief), for appellant.

           Edward S. Culbertson (Bucholtz & Culbertson, P.C., on brief), for
           appellee.

           Lowry Jock Miller (Cyron & Miller, L.L.P., on brief), Guardian *ad
           litem* for the minor child.


        Jason Hugh Albert (husband) appeals from the circuit court's June 14, 2004 order

terminating custody of and visitation with his stepdaughter (child).  In addition to a challenge of the

court's jurisdiction to hear Ana S. Ramirez's (wife's) appeal of the juvenile court order, this appeal

presents the questions as to who has and what is the appropriate burden of proof in a dispute

between a parent and a stepparent on a petition to modify or terminate a prior final custody and

visitation decree.

        The issue presented to us in this appeal is whether the trial court, in addressing a change of

custody and visitation petition between the biological mother and the stepfather, must apply the

presumption as defined in Troxel v. Granville, 530 U.S. 57, 65 (2000), favoring the natural parent

over a third-party or stepparent, or if the existence of a prior final decree of a court of competent

jurisdiction requires that the court apply the "material change in circumstance and best interest of the child" standard in modifying the prior order. Additionally, wife asserts the trial court erred by failing to award her attorney's fees.

For reasons that follow, we agree with husband's contention that the circuit court applied the incorrect standard in deciding whether to terminate his custody and visitation. Accordingly, we reverse the court's order.

BACKGROUND

On appeal, we review the evidence in the light most favorable to the mother, the prevailing party below, granting to her all reasonable inferences fairly deducible therefrom. See Bottoms v. Bottoms, 249 Va. 410, 414, 457 S.E.2d 102, 105 (1995). The child's natural father died before she was born. Husband and wife married on June 21, 1999, when the child was approximately three years old. Husband did not adopt the child but he is the only father figure that she has known. Throughout the marriage until the separation the husband and child had a close relationship. During the year after the parties married they had a son, whose custody is not an issue in this appeal. In June 2001, the parties separated, although they remain married. Following their separation, the juvenile and domestic relations district court entered a consent decree which provided that "[t]he parties shall have joint legal and physical custody of the said children . . . ." Between June 2001 and May 2003 the parties shared legal and physical custody of both children pursuant to that decree.

On May 14, 2003, wife filed a petition to modify custody, visitation, and support based in part on her having moved from Arlington to Bentonville, Virginia. Following a September 22, 2003 hearing, the juvenile and domestic relations district court denied the petition to change physical custody but modified the visitation. Wife appealed that ruling to the circuit court. After a *de novo* hearing, the circuit court found father was a "non-parent" and, thus, in determining

custody the court applied the "actual harm" standard articulated in <u>Griffin v. Griffin</u>, 41 Va. App. 77, 581 S.E.2d 899 (2003). The court concluded that in a dispute between a parent and stepparent where "there has been no showing by clear and convincing evidence of actual harm to [child] . . . [wife's] request for relief [for sole custody and no visitation] should be granted . . . ."

<u>ANALYSIS</u>

<u>Jurisdiction</u>

Primarily, husband asserts the trial court lacked jurisdiction over the appeal from the juvenile court order because wife "failed to provide notice to [him] pursuant to Rule 1:12 . . . ."

Rule 8:20 governs the procedure for appealing from a judgment of the juvenile court, and provides as follows: "[A]ll appeals shall be noted in writing. An appeal is noted only upon timely receipt in the clerk's office of the writing. An appeal may be noted by a party or by the attorney for such party." Wife timely filed her civil appeal notice, completing the provided form. The rule did not require her to serve husband.

In pertinent part, Rule 1:12 provides:

> All pleadings, motions and other papers not required to be served otherwise . . . shall be served by delivering, dispatching by commercial delivery service, transmitting by facsimile, delivering by electronic mail when consented in writing signed by the person to be served, or mailing, a copy to each counsel of record on or before the day of filing.
>
> \*   \*   \*   \*   \*   \*   \*
>
> At the foot of such pleadings and requests shall be appended either acceptance of service or a certificate of counsel that copies were served as this Rule requires, showing the date of delivery and method of service, dispatching, transmitting, or mailing.

Husband asserts, without authority, "that the 'Civil Appeal Notice' is a pleading as contemplated by Rule 1:12 and was required to be served and required the attachment of a certificate of service."

In an appeal of right, the appeal is "perfected" by the timely filing of a notice of appeal. See Rule 8:20. Thus, the notice of appeal, when filed, effectively transfers jurisdiction from the juvenile court to the circuit court and places the named parties within the jurisdiction of the circuit court. See Watkins v. Fairfax County, 42 Va. App. 760, 771-72, 595 S.E.2d 19, 25 (2004). The notice of appeal is a document filed with the juvenile court that notifies that court and the circuit court, as well as the parties, that there will be an appeal. Accordingly, it is a purely ministerial document. See id. Wife's notice of appeal comports with the "purpose behind rules governing a notice of appeal." Carlton v. Paxton, 14 Va. App. 105, 110, 415 S.E.2d 600, 602 (1992). After the filing of the notice of appeal the juvenile court transferred the pleadings and other specified documents to the circuit court as required by Code § 16.1-112, whereupon the circuit court "by *writing to be served* as provided" by statute "notif[ied] the appellee or his or her attorney that such an appeal ha[d] been docketed." Code § 16.1-112 (emphasis added). Husband does not contend that he never received notice that wife filed an appeal. He only claims he did not timely receive service of process. The appeal was perfected in accordance with the Rules of Court and statutory requirements.

Although husband asserts that mother's failure timely to notify him that she had appealed the juvenile court's order in the case regarding her daughter "rendered [him] unable to 'cross-appeal' the ruling with respect to [the parties' son] so that both children's interest might have been before the circuit court on a *de novo* hearing," husband was free to appeal that ruling at his discretion. The case involving the parties' son was separate and distinct from the case at issue here, and husband's decision not to appeal the juvenile court's ruling in that case cannot reasonably be blamed on wife's failure to serve her notice of appeal on him. Indeed, had wife filed her notice of appeal with the juvenile court on the last day permitted, husband would not necessarily have received any service within the ten days allowed him to appeal the other case.

Husband has failed to demonstrate any prejudice as a result of wife's failure to serve him a copy of the notice of appeal.

Custody

"The liberty interest at issue in this case — the interest of parents in the care, custody, and control of their children — is perhaps the oldest of the fundamental liberty interests recognized by this Court." Troxel, 530 U.S. at 65. "[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Id. at 66. In Troxel, the Supreme Court concluded that a "breathtakingly broad" visitation statute which permitted "any person" "at any time" to petition the court for visitation rights "unconstitutionally infringe[d] on that fundamental parental right" by authorizing a court to "disregard and overturn any decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests." Id. at 67.

Relying on Troxel, this Court has found that "in a dispute between a fit parent and a non-parent . . . the best-interests test should be applied only if the trial court first finds 'an actual harm to the child's health or welfare without such visitation.'" Griffin, 41 Va. App. at 83, 581 S.E.2d at 902 (citation omitted).

However, in cases involving the modification of an existing valid custody order, the party seeking the modification bears the burden of proving that a material change of circumstances has occurred since the entry of the initial order and that a change in custody would be in the best interests of the child. See Code § 20-108; see also Fariss v. Tsapel, 3 Va. App. 439, 442, 350 S.E.2d 670, 672 (1986) (citing Keel v. Keel, 225 Va. 606, 611-12, 303 S.E.2d 917, 921 (1983)).

Unlike Troxel, this case involves not an initial "visitation petition" filed by a "third party" but an attempt on the part of a natural parent to terminate custody granted to a stepparent

- 5 -

pursuant to a final valid consent decree. Similarly, unlike Griffin, this case involves not an initial custody determination, but an attempt to change the agreed upon, and judicially sanctioned, existing custody decision. Thus, this case calls for us to determine the effect or impact that a final prior decree of a court of competent jurisdiction has upon the court's standard of review in a custody modification hearing involving a fit parent and a non-parent.

Finding that "Griffin governs," the trial court concluded husband had failed to demonstrate "by clear and convincing evidence . . . actual harm to" the child's health or welfare by denying him visitation rights.

In this case, however, a court of competent jurisdiction had entered a consent order in which the parties agreed to "have joint legal and physical custody of" the child, with the child's "time divided equally between them, week by week . . . ." That order was final and binding upon the parties and other courts and resolved the issues of custody and visitation with the child, subject, of course, to any material change of circumstance which would justify a court modifying the prior holding.

"A consent decree is a contract or agreement between the parties to the suit, entered of record in the cause with the consent of the court, and is binding unless secured by fraud or mistake." Orlandi v. Orlandi, 23 Va. App. 21, 26, 473 S.E.2d 716, 719 (1996).

"Divorcing parents may and, indeed, are encouraged under Virginia public policy, to reach agreement respecting the care and support of their minor children." Shoup v. Shoup, 37 Va. App. 240, 248, 556 S.E.2d 783, 787 (2001). "[P]ublic policy favors prompt resolution of disputes concerning the maintenance and care of minor children and the property rights of the parties. Voluntary, court-approved agreements promote that policy and should be encouraged." Morris v. Morris, 216 Va. 457, 459, 219 S.E.2d 864, 867 (1975).

> A party must obey an existing custody order until a modification
> order supersedes it. "[T]he custody decree is conclusive as to all

issues of law and fact decided and as to the custody determination
made unless and until that determination is modified pursuant to
law." Code § 20-135.

Johnson v. Johnson, 26 Va. App. 135, 146, 493 S.E.2d 668, 673 (1997).

Because the matter on appeal from the circuit court was not an initial custody and

visitation determination, wife, as the party seeking to modify the prior custody and visitation

consent order, bore the burden of proving that a material change of circumstances had occurred

since the entry of the consent order and that a change in visitation would be in the best interests

of the child. See Code § 20-108. By placing the burdens of proof and of going forward with the

evidence upon husband to demonstrate that "actual harm" to the child would result by his not

being granted custody or visitation rights, the court placed the burdens of proof and production

of evidence on the wrong party and applied an incorrect standard. "[W]here the unchallenged

order of a juvenile court remains in effect . . . the burden is on a parent who seeks to change the

custody to show that circumstances have so changed that the best interests of the child require

the transfer." Harper v. Harper, 217 Va. 477, 479, 229 S.E.2d 875, 876 (1976) (citing Dyer v.

Howell, 212 Va. 453, 456, 184 S.E.2d 789, 792 (1971)). Although the husband is a non-parent,

the juvenile court had held in the consent decree that as a stepparent he was entitled to joint legal

and physical custody of the child with the child's time divided equally between them, week by

week. The stepfather and child had been exercising the custody and visitation rights for two

years. The entry of the consent decree altered husband's position from that of simply a

"non-parent" or third party to that of a judicially approved custodian of the child. The parties

had previously agreed that husband was fit to share custody of the child.

"Code § 20-108 gives the divorce court continuing jurisdiction to change or modify its

decree concerning the custody and maintenance of minor children, and a contract between

husband and wife cannot prevent the court from exercising this power." Featherstone v. Brooks,

220 Va. 443, 446, 258 S.E.2d 513, 515 (1979) (citation omitted).  Here the agreement, rather than being merely a custody contract between husband and wife, had been presented and scrutinized and judicially sanctioned by the entrance of the final consent decree.  To allow a natural parent to unilaterally rescind a judicially sanctioned consent decree establishing the custodial rights of the parties involved would render all such custody decrees void and unenforceable.  Such decrees are daily entered in the courts throughout this Commonwealth and are not violative of the principles established in Troxel or Griffin.

Because of the existence of the judicially sanctioned consent decree establishing the custodial rights of the parties, the trial court was required to apply the material change of circumstance and best interests analysis.  Requiring the party seeking a modification of a valid custody or visitation decree to prove a material change of circumstances justifying the modification is not inconsistent with or anathema to a parent's constitutional rights as enunciated in Troxel.

For the foregoing reasons, we find the circuit court improperly applied the "actual harm" analysis to this modification case.  Thus, we remand the case to the trial court for reconsideration in order to apply the proper standard for modification of a custody and visitation decree and to make the necessary findings consistent with this opinion.[1]

Attorney's Fees

Wife asserts the trial court erred by failing to award her attorney's fees.

We are guided by the principle that "[a]n award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion."

---

[1] As the parties remain married, husband continues to be the child's stepfather.  We need not decide whether a divorce between the parties would constitute a material change in circumstances that would so affect the best interests of the child as to require a change in the custody order.

Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). On this record, we cannot

conclude that the trial court abused its discretion in denying wife's request for attorney's fees.

Both parties ask for costs and attorney's fees for matters relating to this appeal.

> The rationale for the appellate court being the proper forum to
> determine the propriety of an award of attorney's fees for efforts
> expended on appeal is clear. The appellate court has the
> opportunity to view the record in its entirety and determine
> whether the appeal is frivolous or whether other reasons exist for
> requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Upon

consideration of the record in this case, we hold that each party shall bear the appellate costs and

attorneys' fees.

Accordingly, we reverse the circuit court's decision and remand the case for the court to

reconsider the modification petition in proceedings not inconsistent with this opinion.

Reversed and remanded.