COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Huff, Judges Chafin and Decker
Argued at Salem, Virginia


JONATHAN LEE BISTEL

v.       Record No. 1126-16-3                    MEMORANDUM OPINION* BY
                                                 CHIEF JUDGE GLEN A. HUFF
SARAH LEE BISTEL                                 APRIL 4, 2017


              FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
                      A. Joseph Canada, Jr., Judge Designate

              Leah E. Hernandez (Kelly G. Roberts; Tucker Griffin Barnes, P.C.,
              on brief), for appellant.

              James B. Glick; Colleen H. Taylor, Guardian *ad litem* for the
              infant children (Vellines Glick & Whitesell, P.C.; Black, Noland &
              Read, P.L.C., on brief), for appellee.


        Jonathan Lee Bistel ("father") appeals the orders of the Circuit Court of Augusta County

("trial court") awarding primary physical custody of S.B. and H.B., infant children, to Sarah Lee

Bistel ("mother"), with joint legal custody shared by the parties.  Father contends that the trial

court erred by granting physical custody to mother, excluding testimony relevant to a history of

family abuse, and denying father's motion to change venue.  Finding no error, this Court affirms

the trial court's rulings with respect to S.B., but dismisses the appeal with respect to H.B.

because the notice of appeal was untimely filed.

                                I.  PROCEDURAL POSTURE

        This Court first addresses father's motion to consolidate his appeals of the trial court's

orders with respect to H.B. and S.B. pursuant to Rule 5A:6(e).  Mother opposes this motion and

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

contends that this Court lacks jurisdiction over the appeal with regard to the H.B. order because father did not timely appeal that order. For the following reasons, this Court finds that father's appeal of the H.B. order was not timely, depriving this Court of jurisdiction over the H.B. appeal.

Rule 5A:6 governs notices of appeal to this Court. Rule 5A:6(e) provides that "[w]henever two or more cases were tried together in the trial court, one notice of appeal and one record may be used to bring all of such cases before this Court even though such cases were not consolidated by formal order." Subsection (a) of that rule, however, provides that "[n]o appeal shall be allowed unless, *within 30 days* after entry of final judgment or other appealable order or decree . . . counsel files with the clerk of the trial court a notice of appeal." Rule 5A:6(a) (emphasis added). This subsection mirrors Code § 8.01-675.3, which provides in part that "a notice of appeal to the Court of Appeals in any case within the jurisdiction of the court *shall be filed within 30 days* from the date of any final judgment order, decree or conviction." (Emphasis added). Further, "[t]he times for filing the notice of appeal (Rule[] 5A:6[)] . . . are mandatory." Rule 5A:3; see also Zion Church Designers & Builders v. McDonald, 18 Va. App. 580, 583, 445 S.E.2d 704, 705-06 (1994) ("The time requirement for the filing of a notice of appeal is jurisdictional. . . . The time requirement for filing is mandatory, and failure of the appellant to file the notice of appeal timely requires dismissal of the appeal."). Although this Court has some discretion in reviewing procedurally deficient appeals, the failure to file a timely notice of appeal is fatal to appellate jurisdiction. Evans v. Commonwealth, 61 Va. App. 339, 345, 735 S.E.2d 252, 254-55 (2012) ("[W]hile a procedural defect in a notice of appeal may not necessarily be fatal to an appellate court obtaining jurisdiction . . . two aspects of a notice of appeal are mandatory substantive requirements: a notice of appeal must be timely filed, and it must 'adequately identif[y] the case to be appealed.'" (quoting Roberson v. Commonwealth, 279 Va. 396, 407, 689 S.E.2d 706, 712-13 (2010))).

In this case, the trial court entered separate custody and visitation orders for each of the children. The custody and visitation order regarding H.B. was entered on May 21, 2016, and the custody and visitation order regarding S.B. was entered on June 5, 2016. Each of these orders was an appealable final order within the meaning of Rule 5A:6(a) because each independently "dispose[d] of the whole subject, [gave] all the relief contemplated, provide[d] with reasonable completeness for giving effect to [its terms], and [left] nothing to be done in the cause save to superintend ministerially the execution of the order." Daniels v. Truck & Equip. Corp., 205 Va. 579, 585, 139 S.E.2d 31, 35 (1964) (quoting Marchant & Taylor v. Mathews County, 139 Va. 723, 734, 124 S.E. 420, 423 (1924)). As such, the Code § 8.01-675.3 and Rule 5A:6(a) thirty-day time limit began running as to the H.B. order on May 21, 2016 and as to the S.B. order on June 5, 2016. Father filed his notice of appeal on July 1, 2016. That notice of appeal is captioned "In re: S.B. and H.B.," but it states that father "hereby appeals to the Court of Appeals of Virginia from the Final Order of this Court *entered on June 5, 2016*." (Emphasis added). Thus, the notice of appeal refers only to the S.B. order.

Accordingly, because July 1, 2016 is well beyond the thirty-day time limit for appealing the H.B. order, and the notice of appeal only contemplates an appeal of the S.B. order, father's appeal as to H.B. is procedurally defaulted. This Court therefore denies father's motion to consolidate the cases and dismisses the appeal with respect to H.B.

## II. BACKGROUND

Following established principles of appellate review, this Court views the evidence in the light most favorable to mother, the party prevailing below, and grants mother the benefit of all reasonable inferences that can be fairly drawn. Chretien v. Chretien, 53 Va. App. 200, 202, 670 S.E.2d 45, 46 (2008) (citing Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003)). This standard requires this Court to presume that the trial court's ruling "settled all

conflicts in the evidence in favor of the prevailing party." Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990). So viewed, the evidence is as follows.

The parties were married on March 10, 2007 and separated in August 2013. During the marriage, the parties had two children, S.B. and H.B. The Juvenile and Domestic Relations District Court of Augusta County entered custody and visitation orders on March 1, 2014, granting the parties joint legal custody over the children and primary physical custody to father. On November 3, 2014, mother filed motions to amend custody and visitation of the children in the Augusta County Circuit Court citing material changes in circumstances since entry of the March 1, 2014 orders.

Before a hearing on those motions occurred, Presiding Judge Victor V. Ludwig recused himself from hearing any proceedings in the case. Although the recusal order states no reason for the recusal, father subsequently moved for a change of venue citing the recusal, the fact that "one of [mother's] relatives is employed in the Augusta County Circuit Court" and that "he is unable to use normal docketing procedures established within the courts" as cause for transferring venue. The trial court denied father's motion.

The parties presented evidence on the custody and visitation motions during a hearing held January 19, 2016, in which mother, father, and various relatives and acquaintances testified. The evidence established the following facts. S.B. was born in 2009 and was six years old at the time of trial. S.B. has a close relationship with both mother and father, as well as with the extended family on both sides. The initial custody and visitation orders provided for overnight visitation with mother, and the parties ordinarily exchanged the children at the home of father's grandparents. From December 2014 to May 2015, however, father unilaterally restricted mother's contact with the children to supervised visits at the grandparents' home. Father argued that he restricted mother's visitation out of concern that mother might have been harming the

children.  Mother and father generally have difficulty communicating with one another, and they have struggled with coordinating events such as physician appointments and with addressing issues like school bullying.

During the hearing, counsel for father asked mother on cross-examination whether she could "recall at one point hitting [S.B.]'s head against the vehicle?"  Counsel for mother objected, arguing that the question was irrelevant because the event in question occurred prior to entry of the previous custody and visitation order.  Counsel for father responded that even though the event occurred prior to the previous order, it was nonetheless relevant because it related to a "history of family abuse," one of the statutory considerations in a custody matter.  The trial court allowed the line of questioning until it strayed into the cause of the separation itself, which the trial court ruled was irrelevant.  During direct examination of father's grandfather later in the hearing, counsel for father began to ask about an event that occurred in August 2013, prompting counsel for mother to object again on the grounds that the question related to events prior to entry of the previous custody and visitation order.  Although counsel for father reminded the trial court that it had "allowed some testimony to that regard" earlier in the hearing, the trial court sustained mother's objection and noted that "[a] million things can happen since [entry of the previous order]. . . . [W]e're going to proceed from the Court Order today."  Counsel for father then announced that she had no further questions for the witness and rested without proffering the witness' anticipated testimony.

Following the close of evidence and closing arguments, the trial court awarded the parties joint legal custody, with primary physical custody to mother and visitation to father.  In its oral ruling, the trial court stated:

> [T]here are several factors that the Court has to look at pursuant to the statute, and I tried to look at all of them.  And there's good and bad on both sides in this case, which is not unusual.

[M]ost of the bruises and stuff I've seen many times. . . . I don't think there's been any evidence—and I was leaning on the guardian's testimony[1] as well—that there has been any physical abuse to the children. . . .

I'm convinced that the mother has not cooperated with the father and father—the mother says he's been controlling. I don't know whether he has or not, but she hasn't done the right thing in terms of not communicating. The children are young. They love both the mother and the father. And the parents are going to have to grow up and act like adults in this situation. . . .

And I'm convinced from all the evidence and considering all the factors—some of them weigh on one side and some weigh on the other—that the children going an hour here and an hour there, as the guardian has pointed out, is very unsettling, and they need a base. And here's what I'm going to do. I'm going to have joint legal custody with physical custody to the mother.

This appeal followed.

## III. STANDARD OF REVIEW

"In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." Farley, 9 Va. App. at 327-28, 387 S.E.2d at 795. The trial court's custody and visitation determination was "within its discretion and is reversible only upon a showing that the court abused its discretion." M.E.D. v. J.P.M., 3 Va. App. 391, 398, 350 S.E.2d 215, 220 (1986). As such, this Court will not disturb the trial court's ruling unless it is plainly wrong or without evidence to support it. Code § 8.01-680.

"A trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley, 9 Va. App. at 329, 387 S.E.2d at 796. Further, "[i]t is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 448 S.E.2d 665, 668 (1997) (*en banc*). "If the decision of the trial court is supported by the

---

[1] The guardian *ad litem*'s testimony is not included in the record.

- 6 -

evidence, 'we are not permitted to substitute our judgment for that of the [judge]'" and must affirm that decision. Vissicchio v. Vissicchio, 27 Va. App. 240, 252, 498 S.E.2d 425, 431 (1998) (quoting Stainback v. Stainback, 11 Va. App. 13, 23, 396 S.E.2d 686, 692 (1990)); see also Farley, 9

Va. App. at 328, 387 S.E.2d at 796 ("Where a trial court makes a determination which is adequately supported by the record, the determination must be affirmed.").

## IV. ANALYSIS

Father assigns error to three of the trial court's rulings: its order granting physical custody of S.B. to mother and visitation to father, its exclusion of testimony relevant to a history of family abuse, and its denial of father's motion to change venue. This Court addresses each assignment in turn.

### A. Custody award

Father contends in his first assignment of error that the "trial court's decision to grant physical custody to [mother] with visitation to [father] is plainly wrong and not supported by the evidence." For the following reasons, this Court affirms the trial court's ruling.

Procedurally, this case presents an appeal of a circuit court's order modifying existing custody and visitation orders pursuant to Code § 20-108, not an appeal of an initial custody and visitation order. As such, mother, "the party seeking to modify the prior custody and visitation consent order, bore the burden of proving that a material change of circumstances had occurred since the entry of the consent order and that a change in [custody and] visitation would be in the best interests of the child." Albert v. Ramirez, 45 Va. App. 799, 808, 613 S.E.2d 865, 869 (2005) (citing Code § 20-108).

The record indicates that mother satisfied the material change in circumstances prong of the analysis. A material change in circumstances can include changes involving the children

themselves as well as changes relating to the parents and their circumstances. See Keel v. Keel, 255 Va. 606, 612, 303 S.E.2d 917, 921 (1983). Additionally, Code § 20-108 specifically provides that "intentional withholding of visitation of a child from the other parent without just cause may constitute a material change of circumstances justifying a change of custody in the discretion of the court." This Court can infer from the trial court's denial of father's motion to strike at the close of mother's evidence that it relied on this ground in finding a material change in circumstances. Specifically, counsel for father argued that "[mother is] presenting nothing here today to allege that there has been a material change in circumstances," and counsel for mother responded that "[father's] denial of contact with the children for a period in excess of six months, which is inexcusable, but certainly a material change . . . . I think that alone gets beyond the material change in circumstances." In any event, neither party on appeal contests that a material change in circumstances occurred and instead focus their arguments on the best-interests prong. See Rule 5A:20(e); Rule 5A:21(d).

When determining the best interests of the child, the trial court must consider the statutory factors set forth in Code § 20-124.3.[2] Vissicchio, 27 Va. App. at 246, 498 S.E.2d at

---

[2] The statutory factors are:

> 1. The age and physical and mental condition of the child, giving due consideration to the child's changing developmental needs;
>
> 2. The age and physical and mental condition of each parent;
>
> 3. The relationship existing between each parent and each child, giving due consideration to the positive involvement with the child's life, the ability to accurately assess and meet the emotional, intellectual and physical needs of the child;
>
> 4. The needs of the child, giving due consideration to other important relationships of the child, including but not limited to siblings, peers and extended family members;

428. That statute further provides that the court "shall communicate to the parties the basis of the decision either orally or in writing" and that "this communication shall set forth the judge's findings regarding the relevant factors."  Code § 20-124.3.  This statutory command requires the trial court to "identify the fundamental, predominating reason or reasons underlying its decision."  Kane v. Szymczak, 41 Va. App. 365, 372-73, 585 S.E.2d 349, 353 (2003).  Crucially, however, "[t]his level of specificity does not require the [trial court] to address all aspects of the decisionmaking process, as one would expect from comprehensive findings of fact and conclusions of law," nor must the trial court "quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors."  Id. at 373, 585 S.E.2d at 353 (quoting Sullivan v. Knick, 38 Va. App. 773, 783, 568 S.E.2d 430, 435 (2002)).  The statute's requirements "cannot be satisfied by formulaic and generalized explanations such as 'I've considered all the factors and I rule thus and such.'"  Id.  Instead, in order to satisfy Code

---

5. The role that each parent has played and will play in the future, in the upbringing and care of the child;

6. The propensity of each parent to actively support the child's contact and relationship with the other parent, including whether a parent has unreasonably denied the other parent access to or visitation with the child;

7. The relative willingness and demonstrated ability of each parent to maintain a close and continuing relationship with the child, and the ability of each parent to cooperate in and resolve disputes regarding matters affecting the child;

8. The reasonable preference of the child, if the court deems the child to be of reasonable intelligence, understanding, age and experience to express such a preference;

9. Any history of family abuse as that term is defined in § 16.1-228 or sexual abuse.  If the court finds such a history, the court may disregard the factors in subdivision 6; and

10. Such other factors as the court deems necessary and proper to the determination.

§ 20-124.3, "the trial court must provide a case-specific explanation (one that finds its contextual meaning from the evidence before the court) of the fundamental, predominating reason or reasons for the decision." Id.

In its ruling, the trial court did just that. At the outset, the trial court observed that it "has to consider the best interest of the child" and acknowledged that "there are several factors the [trial court] has to look at pursuant to the statute, and I tried to look at all of them." Of course, as this Court ruled in Kane, this conclusory statement alone is insufficient to satisfy Code § 20-124.3. The trial court then entered into a "case-specific explanation" discussing in some detail the "fundamental, predominating . . . reasons underlying its decision." Id.

First, the trial court addressed father's contention that mother had engaged in a pattern of family abuse against the children. Father had introduced twenty-three pictures of injuries he alleged the children sustained while with mother. The trial court indicated that after considering them and the testimony regarding mother's treatment of the children, it concluded the injuries were not out of the ordinary for children of that age:

> The children—the pictures, you know, I've seen—I have five children, and I guess you can look at your own experiences, and most of the bruises and stuff I've seen many times. There was one kid that lived on our street at Virginia Beach that he had more bruises, he'd fall down all the time right off of his bicycle. You name them; he had them. I don't think there's been any evidence—and I was leaning on the guardian's testimony as well— that there has been any physical abuse to the children. . . . I'm not convinced that the mother has done anything to harm the children.

This statement indicates that the trial court gave due consideration to statutory factors five and nine. The inference then lies that because the trial court did not find a history of family abuse pursuant to factor nine, it also considered the evidence of father's restriction of mother's visitation rights to supervised visits at his grandparents' house. See Code § 20-124.3(6) ("The propensity of each parent to actively support the child's contact and relationship with the other

- 10 -

parent, including *whether a parent has unreasonably denied the other parent access to or visitation with the child*." (emphasis added)).

The trial court also considered the evidence regarding the parties' dysfunctional attempts at communication and coordination, which is relevant to factors five, six, and seven. Specifically, the trial court observed that it was

> convinced that the mother has not cooperated with the father and father—the mother says he's been controlling. I don't know whether he has or not, but she hasn't done the right thing in terms of not communicating. The children are young. They love both the mother and the father. And the parents are going to have to grow up and act like adults in this situation. . . .

These comments further indicate the trial court's recognition and consideration of the children's young age and relationship with both parents, relevant to factors one, two, and three.

The trial court additionally indicated its consideration of the children's current situation and their need for stability, noting that it was "convinced from all the evidence and considering all the factors—some of them weigh on one side and some weigh on the other—that the children going an hour here and an hour there . . . is very unsettling, and they need a base." The need for stability is among the "other factors" that the trial court deemed "necessary and proper to [its] determination." Code § 20-124.3(10). Additionally, the parties did not contest either that the children had close relationships with the extended family of both parents or that the children were too young to express a reasonable preference, relevant to factors four and eight respectively.

Taken together, the trial court's statements demonstrate that it examined each of the statutory factors and orally communicated to the parties in a case-specific fashion the fundamental, predominating reasons underlying its decision. Kane, 41 Va. App. at 373, 585 S.E.2d at 353. The evidence in the record adequately supported the trial court's conclusion, and as such, "we are not permitted to substitute our judgment for that of the [judge]." Stainback, 11

Va. App. at 23, 396 S.E.2d at 692.  Accordingly, "[a]lthough different inferences could be drawn by reasonable minds from the evidence presented," this Court finds that the trial court did not abuse its discretion in awarding primary physical custody to mother.  Id.

### B.  Exclusion of testimony

Father next contends that the "trial court abused its discretion in excluding testimony relevant to a history of family abuse, which it was required to consider pursuant" to Code § 20-124.3(9).  Specifically, father challenges the trial court's decision to limit his direct examination of his grandfather about matters occurring before entry of the previous custody and visitation orders when the trial court had previously allowed cross-examination of mother about matters from that same period.  Because this assignment of error was not adequately preserved, this Court affirms the trial court's ruling.

"It is well settled that when a party's evidence has been ruled inadmissible, the party must proffer or avouch the evidence for the record in order to preserve the ruling for appeal; otherwise, the appellate court has no basis to decide whether the evidence was admissible." Zelenak v. Commonwealth, 25 Va. App. 295, 302, 487 S.E.2d 873, 876 (1997) (quoting Smith v. Hylton, 14 Va. App. 354, 357-58, 416 S.E.2d 712, 715 (1992)).  "The Court of Appeals and Supreme Court have frequently dismissed appeals because a party failed to proffer the questions and evidence that a presiding officer ruled improper or inadmissible."  Smith, 14 Va. App. at 358, 416 S.E.2d at 715; see also Joynes v. Payne, 36 Va. App. 401, 418, 551 S.E.2d 10, 18 (2001).

Here, the record indicates that father did not proffer what relevant information would have been introduced into evidence had he been permitted to examine his grandfather about events occurring before entry of the previous custody and visitation order.  After counsel for father began to question the witness about an occasion in August 2013, counsel for mother

objected on the grounds that anything happening before entry of the previous order was irrelevant to the current proceedings. Counsel for father reminded the court that it previously "allowed some testimony to that regard," noting that she "had questioned [mother] about that specific incident and she had certain testimony with regard." She argued that because she was "now asking another witness on the same incident . . . [she] believe[d] it's admissible." The trial court sustained the objection. Counsel for father then stated, "I certainly understand that. I'll just renew my argument for the sake of the record just to say that history of family abuse is relevant," but did not proffer any approximation of what she anticipated the witness would say.

Because father did not proffer the testimony or otherwise avouch the evidence anticipated from the rejected line of questioning, "the appellate court has no basis to decide whether the evidence was admissible." Smith, 14 Va. App. at 357-58, 416 S.E.2d at 715. Accordingly, this Court does not consider father's second assignment of error and affirms the trial court's ruling.

C. Denial of motion to change venue

In his final assignment of error, father contends that the trial court abused its discretion by denying his motion to change venue "when the trial court [j]udge had to recuse himself due to [mother's] family ties in the trial court, resulting in delayed docketing procedures." Because denying the motion to change venue was within the trial court's discretion, this Court affirms the trial court's ruling.

Code § 16.1-243(A)(1)(b) governs venue determinations in child custody and visitation cases. According to that statute, cases involving child custody or visitation shall:

> be commenced in the court of the city or county which, in order of priority, (i) is the home of the child at the time of the filing of the petition, or had been the home of the child within six months before the filing of the petition and the child is absent from the city or county because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as a parent continues to live in the city or county, (ii) has significant connection with the child and in which there is substantial

- 13 -

evidence concerning the child's present or future care, protection, training and personal relationships, (iii) is where the child is physically present and the child has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent or (iv) it is in the best interest of the child for the court to assume jurisdiction as no other city or county is an appropriate venue under the preceding provisions of this subdivision[.]

Father contends on brief that pursuant to subsection (iv) of Code § 16.1-243(A)(1)(b), a change to venue outside of Augusta County was in "the best interest of the child" because the trial court was not an appropriate venue "due to [m]other's family member working in the courthouse." Crucially, Code § 16.1-243(A)(1)(b) provides that venue is to be determined "in *order of priority*" with the best interest provision being the lowest priority of the options. (Emphasis added).

The trial court properly considered that the children had a significant connection to Augusta County limited only by father's decision to move outside the county in October 2014, while the proceedings below were pending. Mother and the children's extended maternal and paternal family all live in Augusta County. The children attended school and preschool within Augusta County. Medical services used by the children are located in Augusta County. The only connection the children have to a jurisdiction other than Augusta County is that father relocated outside Augusta County during the pendency of this case. Further, the fact that one of mother's relatives was employed in the Augusta County court system, without more, does not establish that this relative would have had any influence on matters pending before the trial court. Finally, father did not present any evidence that the presiding judge's voluntary recusal and appointment of a substitute judge resulted in any procedural hardships or otherwise prevented him from using the trial court's ordinary docketing procedures.

Accordingly, the trial court did not abuse its discretion in following the Code § 16.1-243(A)(1)(b) order of priority and denying father's motion to change venue to a jurisdiction other than Augusta County.  This Court therefore affirms the trial court's ruling.

## V.  CONCLUSION

For the foregoing reasons, this Court affirms the trial court's custody and visitation order with respect to S.B., and dismisses the custody and visitation appeal with respect to H.B.

<u>Affirmed in part, dismissed in part.</u>